UNITED STATES *v.* JOHN A. CONKEY & CO.

No. 4590.—Invoices dated London, England, September 17, 1936, etc.
Certified September 18, 1936, etc.
Entered at Boston, Mass., October 1, 1936, etc.
Entry No. 4399, etc.

Third Division, Appellate Term

(Decided June 7, 1939)

*Webster J. Oliver*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellant.
*Joseph F. Lockett* for the appellees.

Before CLINE, EVANS, and KEEFE, Judges; CLINE, J., not participating

EVANS, Judge: This is an application for review of a decision and judgment of a single judge reported in Reap. Dec. 4461, and involves the question of the values for duty purposes of certain paper imported from London and entered at the port of Boston during the years 1936, 1937, and 1938. Plaintiffs have limited their claim to that described as "emery cloth." Twenty reappraisements have been consolidated and tried together. When the case was called for hearing before the single judge the importer produced the testimony of the examiner who was called to identify on the invoices in each appraisement the emery cloth involved in the reappraisements. He identified it as being similar to the emery cloth involved in reappraisements 110474–A, etc., decided May 10, 1937, Reap. Dec. 4056. That decision was appealed by both the importer and the Government, but the appeal filed by the Government was abandoned as a result of which abandonment the court, on appeal in Reap. Dec. 4229, affirmed the decision of the lower court as to the value of the emery cloths, which the single judge had held to be the foreign values as represented by the *per se* unit entered values, less 5 per centum and 5 per centum discounts, packed ready for shipment to the United States.

While the examiner was on the stand the importer's attorney offered the record in said reappraisements 110474–A, etc., in evidence in support of his claim that the emery paper in question is entitled to discounts of 5 per centum and 5 per centum, there being no controversy as to the *per se* unit entered values of the merchandise.

The testimony on the similarity of the merchandise in the two cases concludes with the following question by the importers' attorney, after he had asked said examiner if he was familiar with the decision of the single judge referred to above:

Q. And have you noted in green ink with the letter "A" against each item of emery cloth, and so forth, which would be subject, if the appellate division's decision is not overruled, to a discount of 5% and 5%?—A. Yes, sir.

The importers' attorney then stated:

Now, I move, therefore, your Honor, to incorporate in this case now before your Honor, the record in the case of John E. Conkey & Company vs. United States, reappraisement No. 110474–A and others, reported as Reappraisement No. 4056; of the appellate division in the same entitled case, reported as Reappraisement 4229, as a part of the record in this case; and we submit the case upon the record incorporated, and the papers in these cases.

To this motion the Government attorney stated that he had no objection.

It is noted that the importations involved in the incorporated record were made during the latter part of 1935 and in January 1936. The importations in the instant case covered a period from October 1936 to June 1938. The reports of the special agents introduced in the incorporated record, which formed the basis for the holding that the discounts allowed were 5 per centum and 5 per centum, were made at a very remote time in comparison with the date of the importation of the instant merchandise, but the Government made no objection and we assume that it is consenting to the "Yes, sir," answer of the examiner to the leading question of the importers' attorney above noted.

No further testimony was offered so that the case is before us on exactly the same record (except for the identifying testimony of the examiner above noted) which was considered in the incorporated case. Since the entire record was introduced, which included a judgment on the testimony there submitted, it would appear that the Government ought to be foreclosed from further arguing the law and the facts, not having presented any question that was not raised on its appeal, and abandoned in its test case.

The Government attorney apparently discovered something at this late date in one witness' testimony which he thinks the single judge in the test case overlooked. There the court said:

The only question for me to decide is, what were the majority of sales in the usual wholesale quantities and in the ordinary course of trade of same or similar merchandise in the markets of England at the time of the exportation of the instant importations.

Defendant's attorney points out that one witness on cross-examination stated that the sales to consumers were made in the usual wholesale quantities and he also stated that the consumer could not get certain discounts available to those who bought for resale. The question and answer upon which Government relies are quoted in his brief as follows:

X Q. And those people [wholesalers] receive a certain discount or trade discount from your concern, don't they?—A. That is so.

X Q. That is the trade discount of 10 percent, and 5 percent, and then on cash settlement 2½ percent, is that right?—A. No, sir.

X Q. In what part am I in error?—A. They receive wholesalers in their own classification, receive 10 percent trade discount, also receive 5 percent cash discount and in certain instances they receive an extra 2½ percent discount.

\*　　\*　　\*　　\*　　\*　　\*　　\*

X Q. Could a consumer get that discount?—A. No, sir.

\*　　\*　　\*　　\*　　\*　　\*　　\*

X Q. The only one who could not get that discount is what is known as a consumer?—A. The only one who could not get that discount is what is known as a consumer.

Apparently Judge Kincheloe, in his decision published as Reap. Dec. 4056, gave careful consideration to the testimony in every detail, because he refers to the sales to consumers and calls attention to apparent contradictions. In the course of his opinion he quotes, referring to the redirect testimony of the witness, the following:

Likewise, to the *consumers* of emery cloth during said period exporter sold to all purchasers at 2½ per centum discount, sales amounting to 352　\*　\*　\*.

Also that on recross-examination the same witness said that "on emery cloth, exporter made 50 sales on which the discounts were 5 per centum, 5 per centum, and 2½ per centum."

Other exhibits show sales to consumers at a greater discount than 2½ per centum. So that, disregarding the question of whether this court ought to conclude that it was bound by the judgment rendered in the incorporated case, we feel safe in saying that the record fairly supports the decision there rendered in all respects so far as the controversy before us is concerned. We are of the opinion that there was substantial evidence to support Judge Kincheloe's opinion, and consequently in this case we affirm the opinion of the lower court in the instant case and hold that the dutiable value of the "emery cloth" represented by the items marked "A" in green ink on the invoices accompanying the entries herein is the *per se* unit invoice prices less discounts of 5 per centum and 5 per centum, packing included.

As to all other merchandise the appraised values are affirmed. Judgment will be rendered accordingly. It is so ordered.